Breck E. Milde (State Bar No. 122437)
bmilde@terra-law.com
TERRA LAW LLP
177 Park Avenue, Third Floor
San Jose, California 95113
Telephone: (408) 299-1200
Facsimile: (408) 998-4895

Attorneys for Andre Souang

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

GLORINO F. FULARON,

        Debtor.

Case No. 10-58475 ASW

Chapter 13

**TRIAL BRIEF**

Trial Date:    September 20, 2012
Time:    10:00 a.m.
Room:    3035
Hon. Arthur S. Weissbrodt

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1
II. FACTUAL BACKGROUND ................................................................................................2
    A. Fularon's 2009 Chapter 7 Bankruptcy Case ...............................................................2
    B. Marilyn Fularon's 2009 Chapter 7 Bankruptcy Case..................................................2
    C. Fularon's 2010 Chapter 13 Bankruptcy Case .............................................................3
    D. The Trustee Sale .........................................................................................................3
    E. Souang's Motion for Relief From Stay ......................................................................3
        1. Proof of Equitable Interest in Real Property ..................................................3
        2. Preliminary Hearing on September 29, 2010 .................................................4
        3. Evidentiary Hearing on October 7, 2010 .......................................................4
    F. Souang's Appeal and the Ninth Circuit Bankruptcy Appellate Panel's Decision ..................................................................................................................5
    G. Fularon's Responses to Souang's Discovery .............................................................6
III. ARGUMENT .........................................................................................................................7
    A. Consideration of All Relevant Factors, and Balancing of the Equities, Compels Retroactive Annulment of the Automatic Stay in this Case.......................7
    B. Fularon Cannot Meet his Burden of Proving that Retroactive Relief From the Automatic Stay Should be Denied in this Case ...................................11
    C. Souang Did Not Violate the Automatic Stay Because the Transfer of the Real Property is Exempt from the Stay under 11 U.S.C. §362 (b)(24) ..............................................................................................................................12
IV. CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

Algeran, Inc. v. Advance Ross Corp.,
    759 F.2d 1421 (9th Cir. 1985) .................................................................................... 6

Bank of Honolulu v. Anderson (In re Anderson),
    833 F.2d 834 (9th Cir. 1987) ...................................................................................... 5

Burcena v. Bank One,
    2007 U.S. Dist LEXIS 734998 (D. Haw. 2007) ......................................................... 9

Fjeldsted v. Lien (In re Fjeldsted)
    293 B.R. 12 (9th Cir. BAP 2003) ......................................................................... 6, 7, 8

Graves v. Myrvang (In re Myrvang)
    232 F.3d 1116 (9th Cir. 2000) .................................................................................... 5

In re Nat'l. Envtl. Waste Corp.,
    191 B.R. 832 (Bankr. C.D. Cal. 1996) ..................................................................... 11

In re Vallecito Gas, LLC,
    440 B.R. 460 (Bankr. N.D. Tex. 2010) .................................................................... 12

Mataya v. Kissinger (In re Kissinger),
    72 F.3d 107 ............................................................................................................. 8, 9

National Envtl. Waste Corp. v. City of Riverside (In re National Envtl. Waste
    Corp.),
    129 F.3d 1052 ..................................................................................................6, 8, 12

Schwartz v. United States (In re Schwartz),
    954 F.2d 569 (9th Cir. 1992) ................................................................................ 7, 12

Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson),
    195 B.R. 109 (9th Cir. BAP 2003) ............................................................................. 7

Williams v. Levi (In re Williams),
    323 B.R. 691 (9th Cir. BAP 2005) ......................................................................... 7, 8

**Statutes**

11 U.S.C. §362 ................................................................................................................. 7

11 U.S.C. § 362(a) .......................................................................................................... 12

11 U.S.C. §362(b)(24) ................................................................................................ 2, 12

11 U.S.C. §362(d)(1) ...................................................................................................... 12

11 U.S.C. §362(g) ....................................................................................................... 6, 11

11 U.S.C. §549 ............................................................................................................. 3, 11, 12

11 U.S.C. §549(a) ............................................................................................................. 12

11 U.S.C. §549(c) ...................................................................................................... 3, 11, 12

Andre Souang ("Souang") submits the following trial brief in support of his motion for retroactive relief from the automatic stay in the above-captioned dismissed chapter 13 case.

## I. INTRODUCTION

According to Glorino F. Fularon ("Fularon"), he owns a 35% interest in real property located at 215 Foothill Road, Pismo Beach, California (the "Real Property") along with his former wife, Marilyn Fularon (with whom he has apparently resided for many years since their divorce) and his sister, Novelita Resolme. The liens encumbering the Real Property, including tax liens, far exceed its value, and non-judicial foreclosure proceedings were initiated several times before the trustee sale that finally took place on August 16, 2010. Fularon and his ex-wife filed three bankruptcy cases in the 18 months before the trustee sale, the last two of which were dismissed due to their failure to file any of the documents required by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

As has already been established by the evidence presented at the prior hearings on this matter, Souang had no knowledge of the chapter 13 bankruptcy case Fularon filed five minutes before Souang purchased the Real Property at a trustee sale. Fularon has failed to produce the fax confirmation that he testified was provided to the foreclosure trustee prior to the sale, and it is undisputed that Souang is a good faith purchaser who paid value for the Real Property without notice of the bankruptcy.

A balancing of the equities mandates a finding that retroactive relief from the stay should be granted in favor of Souang. The relevant factors to be considered include the bad faith bankruptcy filings by Fularon and his ex-wife, all for the purpose of preventing foreclosure of the Real Property; Fularon's intent to delay and hinder creditors in so doing, the prejudice which would be suffered by Souang, including loss of substantial time, money, attorneys' fees and costs incurred as a result of Fularon's abuse of the bankruptcy system; Fularon's bad faith as demonstrated by his complete failure to comply with his duties as a chapter 13 debtor by filing any schedules, statement of financial affairs, etc.; the impossibility restoring the parties to the *status quo ante*; the diligence demonstrated by Souang by immediately moving for relief from the automatic stay as soon as he determined that Fularon had filed his chapter 13 case; the lack of any

irreparable injury to Fularon should retroactive relief be granted; and the fact that granting retroactive annulment of the stay will promote judicial economy and other efficiencies. Fularon admittedly has no equity in the Real Property, has been unable to service his substantial debt, including that secured by the Real Property, and the debt secured by his residence in the Silver Creek Country Club development in San Jose.

As is more fully discussed below, considering all of the above factors, and the fact that Fularon is unable to bear his ultimate burden of proving that retroactive relief from the stay should be denied, retroactive annulment of the stay should be granted in this case. Alternatively, since Souang was a good faith purchaser of the Real Property without knowledge of the commencement of the bankruptcy case, and he paid fair equivalent value for the Real Property, the transfer of the Real Property should be deemed exempt from the automatic stay under 11 U.S.C. §362(b)(24).

## II. FACTUAL BACKGROUND

### A. Fularon's 2009 Chapter 7 Bankruptcy Case

On February 18, 2009, Fularon filed a voluntary petition under chapter 7 in the United States Bankruptcy Court, Central District of California, case no. 09-10500 RR. Fularon listed the Real Property in his Schedule A, with a total value of $900,000, of which Fularon's 35% was worth $315,000. The Real Property was encumbered by liens in excess of $1,907,000 at the time of Fularon's chapter 7 filing. The secured debt included a First Deed of Trust in the amount of $1,500,000, and a Second Deed of Trust in the amount of approximately $400,000, and delinquent property taxes for the year 2008 in the amount of $7,298. Fularon also listed unsecured non-priority claims in excess of $157,670. Fularon's current income was listed at $796.41 per month, while his expenditures were $14,227.18.

On July 14, 2009, Fularon received a discharge in his chapter 7 bankruptcy case, and on August 11, 2009, the case was closed. At the time of his discharge, Fularon's address was listed at 5705 La Seyne Place, San Jose, California 95138.

### B. Marilyn Fularon's 2009 Chapter 7 Bankruptcy Case

On October 1, 2009, Marilyn Fularon filed a voluntary petition under chapter 7 in the United States Bankruptcy Court, Northern District of California, case no. 09-58425 RLE 7. Ms.

TRIAL BRIEF

Fularon's address was listed as 5705 La Seyne Place, San Jose, California 95138.

On October 2, 2009, the Bankruptcy Court issued its Order and Notice Providing for Automatic Dismissal Upon Failure to File Required Document(s). On November 19, 2009, the Court issued its Order and Notice of Dismissal for Failure to Comply with the Court's prior order filed on October 2, 2009.

### C. Fularon's 2010 Chapter 13 Bankruptcy Case

On August 16, 2010, at 11:56 a.m., Fularon filed a voluntary petition under chapter 13 in the United States Bankruptcy Court, Northern District of California, case no. 10-58475 ASW 13. Fularon's address was listed as 5705 La Seyne Place, San Jose, California 95138.

On August 17, 2010, the Court issued its Order and Notice Providing for Automatic Dismissal Upon Failure to File Required Document(s). On September 15, 2010, the Court entered its Order and Notice of Dismissal for Failure to Comply due to Fularon's failure to comply with the Court's prior August 17, 2010 Order.

### D. The Trustee Sale

On August 16, 2010, at 12:01 p.m., the Real Property was sold to Souang at a duly noticed non-judicial foreclosure sale, where Souang was the highest bidder. He tendered $620,100 in good funds, and the Real Property was sold to him for $618,031. Souang's agent, Carrie Herzog, attended the sale, and confirmed that he was successful bidder by text message sent to him at 12:01 p.m. that day. Neither Souang nor Ms. Herzog had any notice that Fularon had filed his chapter 13 case five minutes before the trustee sale was completed.

### E. Souang's Motion for Relief From Stay

#### 1. Proof of Equitable Interest in Real Property

On August 26, 2010, Souang filed a declaration in the Bankruptcy Court titled "Proof of Equitable Interest in Real Property (11 U.S.C. § 549(c))" in which he stated that he purchased the Real Property at the trustee sale post petition and intended to immediately seek retroactive relief from the automatic stay. Souang further declared that neither he nor the trustee who had conducted the trustee sale had knowledge of Fularon's bankruptcy prior to the sale.

## 2. Preliminary Hearing on September 29, 2010

On September 1, 2010, Souang filed his motion for retroactive relief from automatic stay in this case. In support of the motion, Souang submitted a memorandum of points and authorities and declarations of himself and his attorney, Michael B. Stone. Souang argued that he was entitled to retroactive relief from the automatic stay "for cause" because (1) Fularon's chapter 13 filing was a sham and not filed in good faith; (2) Fularon had no equity in the property and it was not required for an effective reorganization inasmuch as debtor had failed to file a chapter 13 plan; and (3) Fularon's latest bankruptcy filing was part of a scheme to hinder or delay creditors. Souang argued that the balance of equities weighed in his favor for retroactive relief.

In support of the motion, Souang submitted his declaration reiterating that he was a good faith purchaser at the trustee sale and he was not aware that Fularon had filed a bankruptcy case a few minutes earlier on the same day as the trustee's sale. He also submitted a declaration of his attorney, Michael B. Stone, who declared that Fularon's wife had previously filed a bankruptcy petition.

At the hearing on Souang's motion for relief from stay on September 29, 2010, Fularon appeared along with his former spouse, Marilyn Fularon. Fularon, and his former spouse, orally opposed the motion for retroactive relief from the automatic stay. Fularon confirmed at the hearing that the trustee's sale occurred five minutes after the time that he filed his chapter 13 case. He also stated that he faxed a copy of his bankruptcy filing to the trustee who conducted the trustee sale, ReconTrust, prior to the trustee sale. Fularon testified that he faxed the notice from his home fax machine. Despite the Court having made several requests to Fularon for a copy of the fax confirmation, Fularon was unable to produce any such document. Nor has Fularon produced any such document in discovery. Fularon stated that he had proof of the fax delivery, but he had failed to bring a copy to the hearing. At the conclusion of the hearing, the Court scheduled a further evidentiary hearing on Souang's motion for retroactive relief from the automatic stay for October 7, 2010.

## 3. Evidentiary Hearing on October 7, 2010

On October 1, 2010, Souang filed the declaration of his agent, Carrie Herzog. Ms. Herzog

declared that she was present prior to and during the sale, but she was not aware of any bankruptcy filing affecting the sale, nor did she perceive that ReconTrust was aware of any bankruptcy filing. She further testified that she texted Souang from her cell phone at 12:01 p.m. telling him that she had "got it" (referring to the Real Property). A copy of AT&T telephone bills showing the 12:01 time was attached to her declaration.

On October 6, 2010, Souang filed the declaration of Randolyn Logan, an Assistant Vice President of ReconTrust and the Manager of the group within ReconTrust that conducted the trustee sale of Fularon's property. Logan declared he performed a diligent search and reasonable inquiry for all records pertaining to the sale and, to the best of his knowledge, there was none showing communication received from Fularon or any other person on his behalf. He further declared that, at the tine of the sale, ReconTrust was unaware that Fularon had filed a bankruptcy petition.

At the evidentiary hearing on October 7, 2010, Souang's attorney did not produce witnesses to testify, and the proffered documentary evidence was rejected by the Court because it was not authenticated. The Court further declined to take judicial notice of a map which showed the route between debtor's residence and the Courthouse which Souang offered to show that it would have taken debtor more than five minutes to reach his home after filing his petition. The Court summarily denied Souang's motion without further argument.

A docket entry issued by the Court on October 7, 2010, indicted that the sale was void. Subsequently, the Court entered its Order Denying Motion for Retroactive Relief From Stay on January 19, 2011.

F.  **Souang's Appeal and the Ninth Circuit Bankruptcy Appellate Panel's Decision**

On October 12, 2010, Souang filed his appeal of the Bankruptcy Court's order denying retroactive relief in the United States Bankruptcy Appellate Panel of the Ninth Circuit. In its decision, the BAP noted that the Bankruptcy Court was required to balance the equities in order to reach an equitable conclusion, rather than a factual or legal one. *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1121 (9th Cir. 2000), citing *Bank of Honolulu v. Anderson (In re Anderson)*, 833 F.2d 834, 836 (9th Cir. 1987) (*per curiam*). The BAP noted that the record did not

show that the Bankruptcy Court balanced the equities by considering the factors in *National Envtl. Waste Corp. v. City of Riverside (In re National Envtl. Waste Corp.)* 129 F.3d 1052 (9th Cir. 1997) and *Fjelsted v. Lien (In re Fjelsted)*, 293 B.R. 12, (9th Cir. BAP 2003). The BAP noted that the Bankruptcy Court had focused only on the issue of whether the trustee, ReconTrust, had notice of Fularon's bankruptcy filing, but noted that, in the Ninth Circuit, a post petition foreclosure sale taken in violation of the automatic stay, even the sale executed with knowledge of the bankruptcy petition, may be validated by annulment of the stay. *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir. 1985). The BAP also noted that there were no facts in the record that would support a finding that Fularon gave timely notice of his bankruptcy petition to ReconTrust. Finally, the BAP also noted that the Bankruptcy Court misapprehended the burden of proof in retroactive relief from stay matters, noting that under section 362(g) of the Bankruptcy Code, the debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *National Envtl. Waste Corp.*, 129 F.3d at 1052. The BAP noted that Fularon did not meet his ultimate burden because he did not testify at the evidentiary hearing nor did he produce the fax confirmation which allegedly gave notice to ReconTrust that he had filed for bankruptcy. The BAP found that there was no evidence in the record that would support the Bankruptcy Court's ruling.

The BAP concluded that the Bankruptcy Court abused its discretion in denying Souang's motion for retroactive relief from the automatic stay and finding the trustee sale void, and consequently vacated the Court's Order and remanded the matter to the Bankruptcy Court to conduct an appropriate evidentiary hearing and enter adequate findings of fact, conclusions of law and a decision on the merits concerning Souang's motion.

### G. Fularon's Responses to Souang's Discovery

On June 12, 2012, Souang propounded written discovery to Fularon, through his attorney. Fularon's discovery responses were replete with meritless objections, and Fularon has refused to produce documents relevant to the determination of this motion. Souang has filed a motion to compel further responses to discovery, which motion is scheduled for hearing on September 14, 2012.

In Fularon's responses to requests for admissions, Fularon admitted the following: That he has no equity in the Real Property; that he filed his chapter 13 case on August 16, 2010, at 11:56:12 a.m.; and that he did not provide notice of the filing of his chapter 13 bankruptcy to Souang prior to the trustee sale. Fularon was unable to admit whether or not the Real Property constituted his "residence" because the term was "vague and ambiguous."

## III. ARGUMENT

### A. Consideration of All Relevant Factors, and Balancing of the Equities, Compels Retroactive Annulment of the Automatic Stay in this Case

Pursuant to 11 U.S.C. § 362, a petition in bankruptcy operates as a stay against acts that may affect property of the bankruptcy estate *National Envtl. Waste Corp.*, 129 F. 3d at 1054. However, section 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay. *Ibid.*; *Schwartz v. United States (In re Schwartz)*, 954 F. 2d 569, 572 (9th Cir. 1992).

> Section 362(d) sets forth the grounds for relief from the stay. It provides that the court shall grant relief—for example, by terminating, annulling, modifying or conditioning the stay—"for cause, including the lack of adequate protection of an interest in property." In addition, § 362 provides that the court shall grant relief from the stay of an act against the property if the debtor has no equity in the property and the property is not necessary for an effective reorganization.
>
> A bankruptcy court has authority to make exceptions to, and to annul, the automatic stay under § 362(d). This authority includes annulment providing retroactive relief, which, if granted, moots any issue as to whether the violating sale was void because, then, there would have been no actionable stay violation.
>
> The Ninth Circuit has held that the bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay."

*Fjeldsted*, 293 B.R. at 20 (9th Cir. BAP 2003) (citations omitted); see *Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*, 195 B.R. 109, 118 (9th Cir. BAP 2003) ("bankruptcy court has 'wide latitude' in granting or denying annulment of stay"); *Williams v. Levi (In re Williams)*, 323 B.R. 691, 699-700 (9th Cir. BAP 2005) ("postpetition actions taken in violation of the automatic stay, even those undertaken by an actor with knowledge of the bankruptcy filing, may be validated by annulment of the stay").

Under Ninth Circuit law, courts are to engage in a case by case analysis and "balance the equities" to determine whether to retroactively annul the automatic stay.

> Many courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor.
>
> …However, we have never held these two factors to be dispositive, instead, we have engaged in a case by case analysis. Thus, this court, similar to others, balances the equities in order to determine whether retroactive annulment is justified.

*National Envtl. Waste Corp.*, 129 F. 3d at 1055 (citations omitted).

The Ninth Circuit Bankruptcy Appellate Panel has suggested that the following factors be considered when deciding whether to annul the stay: (1) number of bankruptcy filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of stay but nonetheless took action; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the *status quo ante*; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. *Fjeldsted*, 293 B.R. at 25; *Williams*, 323 B.R. at 700.

The foregoing items, however, are merely a framework for analysis and, in any given case, one factor may so outweigh the others as to be dispositive. *Fjeldsted*, 293 B.R. at 25; *Williams*, 323 B.R. at 700-701. An additional factor to be considered in determining whether to grant retroactive relief, is whether the court would have granted relief from the automatic stay if the creditor had moved for relief prior to the foreclosure. *National Envtl. Waste Corp.*, 129 F.3d at 1056; *Mataya v.*

*Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995). Also, debtor's use of the mechanism of the automatic stay in bankruptcy to simply block a foreclosure is grounds for retroactive annulment of the stay. *Burcena v. Bank One*, 2007 U.S. Dist LEXIS 734998 *29 (D. Haw. 2007).

Applying the factors relevant to the question of whether relief from the automatic stay should be granted retroactively, and balancing the equities in this case, compels the Court to grant Souang's motion for retroactive relief from the automatic stay.

1. <u>Number of bankruptcy filings</u>: Fularon and his former wife (who for all practical purposes appears to be acting as his wife, despite their legal status), filed three bankruptcy cases in the 18 months prior to the trustee sale. These all appear to have been motivated by an effort to prevent foreclosure of the Real Property. Additionally, they have filed litigation in the state courts, in an attempt to prevent foreclosure of their real property holdings.

2. <u>Intention to delay and hinder creditors</u>: The temporal proximity of Fularon's last bankruptcy filing, five minutes before the scheduled trustee sale, along with his and his former wife's failure to comply with their basic duties as debtors by filing their schedules statement of financial affairs, etc., clearly indicates that Fularon intended to delay and hinder his creditors, and to specifically prevent foreclosure of the Real Property. In fact, Fularon's counsel admitted as much in his opposition to Souang's motion to compel discovery, stating that Fularon's chapter 13 case was filed "to prevent an imminent foreclosure."

3. <u>Extent of prejudice to creditors and third-parties</u>: Souang would be extremely prejudiced if stay relief is not made retroactive. Souang has invested his time and resources in researching the Real Property, tied up over $618,000 of his money, and has spent substantial attorneys' fees, and the valuable time of himself, his agents, and employees in attempting to take possession of the Real Property which he purchased at a lawful non-judicial foreclosure sale. Should the sale be deemed void, and title transferred to Fularon, Souang will no doubt face months, if not years, of further manipulation and abuse of the bankruptcy system, as evidenced by Fularon's and his ex-wife's course of conduct since 2009. Additionally, Fularon's lender, and other lien holders, will be prejudiced by having to notice and conduct another foreclosure sale, and be forced to wait many more months before they will receive the sale proceeds that Souang has previously

TRIAL BRIEF

tendered to purchase the Real Property.

4. **Fularon's overall good faith**: Fularon's and his ex-wife's multiple bankruptcy filings are well documented, and Fularon's bad faith is clearly established by his failure to make any effort to comply with his duties as a chapter 13 debtor, resulting in the dismissal of this case.

5. **Souang's knowledge of the stay**: Souang had no knowledge of Fularon's bankruptcy filing when he purchased the Real Property at the trustee sale.

6. **Fularon's compliance with the Bankruptcy Code and Rules**: Neither Fularon, nor his ex-wife, made any effort to comply with the Bankruptcy Code or Rules, or the orders of this Court, resulting in the dismissal of their last two bankruptcy filings.

7. **Ease of restoring the parties to the *status quo ante***: As mentioned above, it would be extremely difficult to restore the parties to the *status quo ante* because of, among other things, the fact that over two years have elapsed since the foreclosure sale, and the fact that Souang has expended thousands of dollars in litigating issues pertaining to the Real Property, none of which may be recovered if the sale is deemed void and the Real Property transferred to Fularon. Souang invested his time and resources in identifying the Real Property, obtaining funds to tender to the trustee for the purchase, and by successfully making the winning bid at the trustee sale. The Real Property is unique, and cannot be replaced by another property or re-acquired for the same price.

8. **Costs of annulment to Fularon and his creditors**: The costs of annulment to Fularon is minimal. Fularon will finally be divested of the Real Property, which is worth less than half of the debt secured by liens against it. Fularon has clearly been unable to service the substantial debt since well before his first chapter 7 bankruptcy filed in early 2009. Moreover, in today's economic environment, there is no chance that Fularon could obtain the financing necessary for continued ownership of the Property, particularly when he was unable to do so in the years leading up to the foreclosure. As discussed above, the cost if the annulment is not granted, particularly to Souang, is substantial.

9. **How quickly Souang moved for annulment or how quickly Fularon moved to set aside the sale**: Souang has acted diligently in requesting that relief from the automatic stay be granted retroactively. Shortly after he learned of Fularon's chapter 13 filing, Souang filed his

"Proof of Equitable Interest in Real Property (11 U.S.C. § 549(c))" on August 26, 2010, and he filed his motion for retroactive relief from the automatic stay a week later on September 1, 2010. Fularon, on the other hand, has taken no action to set aside the sale, other than resisting Souang's efforts to obtain retroactive annulment of the stay.

10. <u>Whether annulment of the stay will cause irreparable injury to Fularon</u>: Annulment of the stay will not cause irreparable injury to Fularon. Fularon had several years to either sell the Real Property or refinance it, but failed to do so. He has no equity in the Property nor the financial ability to retain ownership. Fularon will suffer no injury by being foreclosed out of property he is unable to afford, and which is not his residence.

11. <u>Whether stay relief will promote judicial economy or other efficiencies</u>: Stay relief would clearly promote judicial economy as the serial bankruptcy and other filings arising out of Fularon's attempts to prevent foreclosure of the Property will be stopped.

12. <u>Whether the Court would have granted relief from stay</u>: This Court dismissed Fularon's chapter 13 case. The Court would certainly have granted relief from the automatic stay to Souang or the secured creditor who caused the trustee sale to be conducted based on Fularon's lack of equity in the Real Property, his inability to make adequate protection payments, and his refusal to comply with the basic requisites of the Bankruptcy Code and Rules.

Accordingly, all factors, including the fact that Fularon filed his last chapter 13 case for the sole purpose of blocking foreclosure, support the conclusion that relief from the automatic stay should be granted retroactively.

**B.  Fularon Cannot Meet his Burden of Proving that Retroactive Relief From the Automatic Stay Should be Denied in this Case**

11 U.S.C. § 362(g) provides:

> In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section – (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues.

Under this section, the debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *In re Nat'l. Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996) (debtor has the burden of proof to demonstrate that "cause" does not exist to

annul the stay under § 362(d)(1)), *aff'd. Nat'l. Envtl. Waste Corp.*, 129 F.3d 1052.

### C. Souang Did Not Violate the Automatic Stay Because the Transfer of the Real Property is Exempt from the Stay under 11 U.S.C. §362 (b) (24)

The automatic stay is set forth in 11 U.S.C. § 362(a). Section 362(b) sets forth a list of exceptions to the automatic stay. It provides, among other things, that the filing of a bankruptcy petition "does not operate as a stay . . . (24) under subsection (a), of any transfer that is not avoidable . . . under section 549."

11 U.S.C. § 549(a) provides that, except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate that occurs after the commencement of the bankruptcy case. An exception to the trustee's right to avoid the pre-petition transfer of property under section 549(a) is provided in section 549(c). That subsection provides, in pertinent part:

> The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser.

Accordingly, a pre-petition transfer of property of the estate is valid as to a good faith purchaser for value, and may not be avoided under section 549(c), and such a transfer is exempt from the automatic stay. *In re Schwartz*, 954 F.2d at 574; *In re Vallecito Gas, LLC*, 440 B.R. 460, 479, 481-482 (Bankr. N.D. Tex. 2010).

In this case, a bankruptcy trustee, or the debtor, could not avoid the transfer of the real property to Souang at the trustee's sale. Souang is a good faith purchaser without knowledge of the commencement of the bankruptcy case, and paid present fair equivalent value. There was no copy or notice of the bankruptcy petition filed in the recorder's office prior to the foreclosure sale. Accordingly, because the transfer of the subject property could not be avoided pursuant to Bankruptcy Code section 549(c), the transfer is excepted from the automatic stay under Bankruptcy Code section 362(b)(24). There was no violation of the automatic stay by Souang.

## IV. CONCLUSION

Based on the facts and argument set forth above, and to be presented at the hearing on this motion, Andre Souang respectfully requests that this Court enter an order granting retroactive annulment of the automatic stay effective August 16, 2010, or alternatively, enter an order determining that the automatic stay was not in effect as of that date.

Dated: September 5, 2012

TERRA LAW LLP

By: /s/ Breck E. Milde
Breck E. Milde
Attorneys for Andre Souang